## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| SYNAGRO TECHNOLOGIES, INC., | Case No. _____ |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BRICE GREEN, | |
| Defendant. | |

Plaintiff Synagro Technologies, Inc. ("Synagro"), through counsel, files this Complaint for injunctive relief and damages against Defendant Brice Green ("Green"), alleging as follows:

### SUMMARY

1.     This Action concerns Defendant's violations of his contractual, statutory and common law obligations not to misappropriate Synagro's confidential, proprietary, and trade secret information. This Action also concerns Green's breach of his fiduciary duty of loyalty to Synagro.

2.     Among other improper actions, Green (1) accessed, used, and retained Synagro's confidential, proprietary, and trade secret information, including, but not limited to its research and development, client and potential client data and information, marketing and bidding strategies, and pricing models; (2) subsequently used that information, while Green was still employed by Synagro, to represent New Earth USA, LLC ("New Earth"), Synagro's direct competitor, in bidding on and obtaining at least one contract for which Synagro was also competing; and (3) took these actions in violation of federal and state statutory law, as well as the common law of the state of Iowa.  Green also took these actions in direct violation of the non-

disclosure, non-compete, and non-solicit provisions of his Compensation Plan contract with Synagro.

3.      Synagro therefore seeks, in addition to economic and other forms of damages, injunctive relief to prevent irreparable harm resulting from Green's unlawful acts, including theft and misappropriation of trade secrets, and breach of his common law obligations, and to protect Synagro' customer relationships, confidential information, and goodwill.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Green's acts constitute violations of federal law under the Defending Trade Secrets Act ("DTSA") of 2016, Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016, and amends chapter 90 of Title 18 of the U.S. Code.

5.      This Court also has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332(a) because the parties are diverse.  Synagro is a Delaware company with its principal place of business in Baltimore, Maryland.  Defendant Green is a resident of the state of Iowa. The amount in controversy also exceeds $75,000.00, exclusive of interest and costs.

6.      Supplemental jurisdiction is proper pursuant to 28 U.S.C. § 1367.

7.      Under 28 U.S.C. § 1391, venue is proper in this Court because this is the judicial district in which Defendant Green resides and this judicial district is where a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

8.      Synagro is the country's preeminent provider of biosolids and residuals solutions, providing solutions for all aspects of biosolid and residual management, including land permitting, soil analysis, and facilities development.

9.      Green is Synagro's former National Industrial Sales Director. In the months immediately preceding his termination, Green worked, without Synagro's knowledge, for both Synagro and New Earth. Green's positions with Synagro and New Earth were similar, if not identical, sales roles. Upon information and belief, Green is currently employed by New Earth or is otherwise engaged in providing it services under a contractual arrangement.

## RELEVANT FACTS

10.      The biosolid, residual, and organic solutions industry is extremely competitive and involves cutting edge technological developments, innovation, and research. Because the industry is so competitive, Synagro devotes substantial time and expense to not only developing and marketing its products and services, but also to identifying the clients which are in need of Synagro's solutions. Synagro also heavily invests in its salesforce, assisting them in: identifying key decision-makers at its clients and potential clients; cultivating those client and potential client relationships; learning the specialized needs and preferences of its clients and potential clients; and working out client-specific pricing and service arrangements.

11.      Synagro also spends substantial time and money to develop confidential, proprietary, and trade secret information about its clients and potential clients, as well as its own internal research and development of its products and its bidding, pricing, and marketing strategies. This information is not publicly available and is unique to Synagro, giving it a significant competitive advantage in the marketplace. Synagro takes measures to protect its confidential, proprietary, and trade secret information from disclosure.

12.      Green began working for Synagro on or around August 18, 2003, and most recently served as Synagro's National Industrial Sales Director.

13.      As National Industrial Sales Director, Green had access to and was intimately

involved with Synagro's confidential, proprietary, and trade secret information, including Synagro's bidding and marketing strategies, pricing models, product offerings, research and development, institutional knowledge, client contacts, and business development investment.

14.     Green was also intimately involved in Synagro's operations, sales activities, business development, and contract bidding, and was provided significant training, resources, and support to develop good will and close, advantageous business relationships with Synagro's customers and potential customers.

15.     As a condition of his employment, Green was subject to Synagro's Code of Conduct, which contains a specific section entitled "Synagro's Use or Appropriation of Assets or Information."

16.     On July 30, 2003, Green received a copy of Synagro's Confidentiality of Company Information policy, acknowledging receipt of it, as well as Synagro's other personnel policies.

17.     The Confidentiality of Company Information Policy states, in relevant part:

> The protection of confidential business information is vital to the interest and success of the Company. Such confidential information includes, but not limited to: Compensation Data, Customer Lists, Financial Information, Marketing Strategies, Pricing, Pending Projects, Proposals, Proprietary Processes, and Research and Development Strategies. Any employee who improperly uses or discloses confidential information or trade secrets will be subject to disciplinary action, up to and including termination and/or prosecution to the fullest extent of the law, even if he or she does not personally benefit from the disclosure of such information.

18.     On April 26, 2012, as a condition of his continued employment, Green entered into Synagro's Sales Variable Compensation Plan (the "Plan").

19.     The Plan replaced all previous commission plans and remained in force unless cancelled or amended in writing by Synagro. Even if cancelled or replaced, the Plan would have governed any work performed and/or contracts negotiated and/or entered into prior to being

cancelled or replaced.

20.     Under Section 9 of the Plan, Green agreed to "maintain in confidence and shall not directly, indirectly or otherwise, use, discriminate, disclose or publish, or use for his…benefit or the benefit of any person, firm, corporation or other entity any confidential or proprietary information or trade secrets relating to Synagro."

21.     Under the Plan, confidential, proprietary, and/or trade secret information includes:

> [B]usiness plans, business strategies and methods,   acquisition                targets, intellectual property in the form of patents, trademarks and copyrights and applications therefor, ideas, inventions, works, discoveries, improvements, information, documents, formulae, practices, processes, methods, developments, source code, modifications, technology, techniques, data, programs, other know-how or materials, owned, developed or possessed by Synagro, whether in tangible or intangible form, information with respect to Synagro's operations, processes, products, inventions, business practices, finances, principals, vendors, suppliers, customers, potential customers, marketing methods, costs, prices, contractual relationships, regulatory status, prospects and compensation paid to employees or other terms of employment.

22.     Under § 9(i) of the Plan, during his employment and for twelve (12) months thereafter, Green:

> i.     shall not solicit, contact or enter into any agreement or contract with any employee, agent, independent contractor, customer or Prospective Customer (as defined below) of Synagro or its Affiliates which results in activities that are competitive with Synagro. For purposes of this Agreement, the term "Prospective Customer" shall mean a person or entity from which Synagro or its Affiliates is actively soliciting business or has concrete plans to solicit business as of the date Participant's employment with Synagro is terminated[.]

23.     Under § 9(ii) of the Plan, during his employment and for twelve (12) months thereafter, Green:

> ii.    shall not request, suggest or direct that any present or future employee, agent, independent contractor, customer or Prospective Customer of Synagro or its Affiliates curtail or cancel its business or refrain from doing business with Synagro or its Affiliates[.]

24.     Under § 9(iv) of the Plan, during his employment and for twelve (12) months

thereafter, Green:

iii.    shall not, directly or acting alone or as a member of a partnership, as a holder or owner of any security, as an employee, agent, advisor, consultant to, representative of, or in any other capacity…within any region in which Participant has acted as a Sales Director for Synagro (the "Restrictive Territory), carry on or be engaged or otherwise take part in…or render any service (whether for or without compensation) to any entity (other than Synagro or its Affiliates) who or which is directly or indirectly engaged in the competitive business[.]

25.    Despite his obligations under the Code of Conduct and the Compensation Plan, while still employed by Synagro, Green: 1) disclosed Synagro's confidential, proprietary, and trade secret information to New Earth; 2) solicited multiple customers and/or prospective customers on behalf of New Earth in direct competition with Synagro; 3) requested, suggested, and/or directed multiple customers and/or potential customers to curtail, cancel, or refrain from doing business with Synagro; and 4) carried on, engaged in, took part in, and/or rendered services to New Earth, who is directly engaged in a competitive business with Synagro.

26.    In or around May 2016, Synagro was in the process of rebidding its contract with Iowa International Paper ("IIP").

27.    As National Industrial Sales Director, Green was in charge of rebidding the IIP contract on behalf of Synagro.

28.    On or around June 2016, Richard Ellman, Synagro's Operations Manager, informed his colleague, Elizabeth Bruno, Synagro's Area Sales Manager, that Green was working for New Earth, under the supervision of Daniel Hintz, New Earth's owner, while still employed by Synagro.

29.    On or around August 2016, Mike McMurrin, the owner of McMurrin Trucking, a subcontractor of Synagro, called Synagro's Vice President of Services, Barry Clements.

30.    Mr. McMurrin advised Mr. Clements that Green and Christopher Ruhl, Synagro's

Assistant Operations Manager, were working on behalf of New Earth, under the supervision of Hintz, in bidding on the IIP contract.

31.     On or around August 2016, Synagro learned that it lost the IIP rebid to New Earth.

32.     Synagro launched an immediate investigation into the allegation that Green was working for both Synagro and New Earth, and that Green was leading New Earth's efforts to bid on the IIP contract that Synagro was also bidding on.

33.     As part of the investigation, Synagro learned that on or about July 8, 2016, Christopher Teeters, Synagro's Area Director, received a phone call from Ms. Bruno, who informed Mr. Teeters that Green was representing New Earth in bidding on the IIP contract.

34.     As part of the investigation, Synagro also learned that, during the winter of 2015-2016, Green and Hintz pitched New Earth's products and services to IIP as part of the same bidding process Green was heading up for Synagro.

35.     As part of the investigation, Mr. McMurrin informed Synagro that Mr. Ruhl told him that Green was a part owner of New Earth.

36.     Mr. McMurrin also informed Synagro that another former Synagro employee, Matt Holub, was also working for New Earth, and that Green and Mr. Ruhl were feeding Mr. Holub information about Synagro's contracts in order to steal them for New Earth.

37.     After Mr. McMurrin's conversation with Mr. Holub, Mr. Holub text messaged Mr. McMurrin, saying:

> Don't say anything about Brice being involved unless they bring it up please. I don't think he wants anyone to know.

38.     As part of the investigation, Mr. Teeters confirmed that Green was working with New Earth as early as 2014 and that Green was involved in at least one other project which Synagro lost its rebid and was ultimately awarded to New Earth.

39.     As part of the investigation, Sidgried Gehrlein, Synagro's former Technical Services Specialist, stated that he personally participated in a meeting where Green, Mr. Holub, and John Kahon, Synagro's former Operations Manager, discussed New Earth's long term business strategies and, more specifically, discussed how New Earth wanted to pursue Synagro's Resolute contract. Mr. Gehrlein also told Synagro that Green was involved in bidding against Synagro on behalf of New Earth, under the supervision of Hintz, on Synagro's FIBREK contract.

40.     Upon information and belief, Resolute and Fibrek were formerly two separate companies, but now the two operate under the same business name, Resolute Forest Products.

41.     On or about September 12, 2016, as a result of the investigation, Synagro terminated for cause Green's employment for violating his contractual obligations under the Plan, for violating Company policy, and for working with a direct competitor in violation of his common law duty of loyalty to Synagro, among other reasons.

## CAUSES OF ACTION

### COUNT I
### Violation of the Defend Trade Secrets Act – Against Green
### Federal Statutory Law

42.     Synagro incorporates by reference all of the previous allegations as though fully set forth herein.

43.     The Defend Trade Secrets Act ("DTSA") of 2016, Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016, and amends chapter 90 of Title 18 of the U.S. Code, forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate of foreign commerce."

44.     "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or engineering information."

45.     During his employment, Green had access to confidential and proprietary information which constituted Synagro's trade secrets. As described above, this included, but was not limited to information regarding Synagro's customers and prospective customers, its research and development, its bidding and marketing strategies, its pricing models, and its market research.

46.     Green shared this information with New Earth in order to directly compete with Synagro on multiple bidding processes for which he was directly responsible for as an employee of Synagro.

47.     This information was related to multiple products or services used in, or intended for use in, interstate commerce.

48.     This information: 1) is not known outside Synagro; 2) is known only by Synagro employees, including Green, and others involved in the business; 3) is subject to reasonable measures to guard the secrecy of the information, including Synagro's technology and code of conduct policies; 4) is valuable; and 5) is difficult for others to properly acquire or independently duplicate.

49.     Green knew that he had a duty, pursuant to the Plan and the Company's policies, to maintain the secrecy of Synagro's trade secrets.

50.     Green used this information, through his dual employment with Synagro and New Earth, to directly compete with Synagro on various contracts, including the IIP, Resolute, and FIBREK contracts.

51.     Green also used this information without Synagro's knowledge, consent, or authorization to benefit them in a manner that will cause irreparable harm to Synagro.

52.     Green's actions constitute actual and continuing misappropriation in violation of the DTSA.

53.     Synagro has suffered damages and irreparable harm as a result of Green's breaches of the DTSA.

54.     Synagro is entitled to recover actual damages and attorneys' fees.

55.     Synagro's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable and compensatory relief.

56.     Green's actions will continue to cause irreparable harm and damages to Synagro if not restrained.

## COUNT II
### Misappropriation of Trade Secrets – Against Green
### Iowa Statutory Law

57.     Synagro incorporates all of the previous allegations as though fully set forth herein.

58.     During his employment, Green had access to confidential and proprietary information which constituted Synagro's trade secrets. As described above, this included, but was not limited to information regarding Synagro's customers and prospective customers, its research and development, its bidding and marketing strategies, its pricing models, and its market research.

59.     This information constitutes trade secrets under the Iowa Uniform Trade Secrets Act, Iowa Code Section 550.2.

60.     Green shared this information with New Earth in order to directly compete with Synagro on multiple bidding processes for which he was directly responsible as an employee of Synagro.

61.     This information: 1) is not known outside Synagro; 2) is known only by Synagro employees, including Green, and others involved in the business; 3) is subject to reasonable measures to guard the secrecy of the information, including Synagro's technology and code of conduct policies; 4) is valuable; and 5) is difficult for others to properly acquire or independently

duplicate.

62.     Green knew he had a duty, pursuant to the Plan and the Company's policies, to maintain the secrecy of Synagro's trade secrets.

63.     Green used this information, through his dual employment with Synagro and New Earth, to directly compete with Synagro on various contracts, including the IIP, Resolute, and FIBREK contracts.

64.     Green also used this information without Synagro's knowledge, consent, or authorization to benefit themselves in a manner that will cause irreparable harm to Synagro.

65.     Green's actions constitute actual and continuing misappropriation in violation of the Iowa Uniform Trade Secrets Act.

66.     Synagro has suffered damages and irreparable harm as a result of Green's violations.

67.     Synagro is entitled to recover actual damages, damages for unjust enrichment, exemplary damages, injunctive relief, and attorneys' fees.

68.     Synagro's damages cannot be adequately compensated through remedies at law alone, thereby requiring equitable relief in addition to compensatory relief.

69.     Green's actions will continue to cause irreparable harm and damages to Synagro if not restrained.

## COUNT III
### Breach of Contract – Against Green
### Iowa Common Law

70.     Synagro incorporates all of the previous allegations as though fully set forth herein.

71.     In consideration of his continued employment with Synagro, Green entered into the Plan.

72.     Under § 9 of the Plan, Green was obligated to maintain and not disclose Synagro's confidential, proprietary, and trade secret information.

73.     Under § 9 (i), (ii), and (iv) of the Plan, during his employment and for twelve (12) months thereafter, Green was prohibited from: 1) soliciting Synagro's customers and/or potential customers in activities competitive to Synagro; 2) requesting, suggesting or directing Synagro's customers and/or potential customers curtail, or cancel its business with Synagro; and 3) providing any services which competed with Synagro.

74.     Despite his obligations under the Plan, while still employed by Synagro, and afterward, Green: 1) disclosed Synagro's confidential, proprietary, and trade secret information to New Earth; 2) solicited multiple customer and/or prospective customers on behalf of New Earth in direct competition with Synagro; 3) requested, suggested, and/or directed multiple customers and/or potential customers to curtail, cancel, or refrain from doing business with Synagro; and 4) carried on, engaged in, took part in, and/or rendered services to New Earth, who is directly engaged in a competitive business with Synagro.

75.     By engaging in these activities, Green breached his contractual duties under the Plan.

76.     Green's unlawful acts, in direct and knowing violation of the Plan, have caused or will continue to cause damage to Synagro, including loss of business, irreparable harm in the form of loss of customers and prospective customers, revenue, profitability, as well as harm to Synagro's other legitimate business interests.

77.     The harm caused by Green is continuing and cannot be compensated by monetary damages alone and, thus, Synagro is also entitled to injunctive relief.

78.     Unless restrained by this Court, Green will continue his unlawful actions.

## COUNT IV
### Tortious Interference with Prospective Business – Against Green
### Iowa Common Law

79.     Synagro incorporates all of the previous allegations as though fully set forth herein.

80.     Synagro had an existing business relationship with IIP with the probability of future economic benefit to Synagro. Green was aware of this relationship and Synagro's business expectancy.

81.     Green wrongfully and intentionally used Synagro's confidential, proprietary, and trade secret information in order to compete with Synagro during the bidding for the IIP contract. This information gave Green an unfair advantage in undercutting Synagro's efforts and, as a result, tortiously interfered with its prospective business with IIP.

82.     Absent Green's intentional and knowing misconduct, Synagro would have realized the business expectancy it had with IIP.

83.     Due to Green's misconduct and interference, Synagro has suffered and will continue to suffer damages, which cannot be reasonably ascertained at present.

84.     Upon information and belief, Green engaged in similar conduct with regard to Synagro's Resolute and FIBREK contracts.

## COUNT V
### Breach of Duty of Loyalty – Against Green
### Iowa Common Law

85.     Synagro incorporates all of the previous allegations as though fully set forth herein.

86.     Green owed, and continues to owe, a duty of loyalty to Synagro.

87.     Green has breached his duty of loyalty to Synagro.

88.     Specifically, while still employed by Synagro, Green worked on behalf of New Earth, Synagro's direct competitor, provided New Earth with Synagro's confidential, proprietary,

13

and trade secret information, and used that information to undercut Synagro's bidding efforts on the IIP contract, resulting in that contract being awarded to New Earth.

89.     Upon information and belief, for at least two years prior to his termination from Synagro, Green engaged in similar conduct on at least two other contracts – Resolute and FIBREK – both of which were awarded to New Earth and not to Synagro.

90.     Upon information and belief, Green continues to use Synagro's confidential, proprietary, and trade secret information in order to wrongfully compete with Synagro.

91.     Green took these actions for the purpose of furthering his own, as well as New Earth's, business interests.

92.     As a proximate cause of Green's unlawful conduct as described above, Synagro has suffered and will continue to suffer damages that cannot be reasonably ascertained at present.

93.     Unless restrained by this Court, Green will continue his unlawful actions and Synagro will be irreparably harmed.

94.     Synagro has no adequate remedy at law and is, therefore, entitled to an injunction enjoining Green from further unlawful acts.

95.     Also as a direct and proximate result of Green's unlawful actions, Synagro is also entitled to monetary damages, interest, past pecuniary expenses, future pecuniary expenses, plus costs of suit and reasonable attorney fees.

## **PRAYER FOR RELIEF**

WHEREFORE, as a result of Defendant's wrongful actions, Synagro requests that this Court enter judgment in its favor and against Green on the above Counts, and further:

• Award Synagro contract, economic, actual, and compensatory damages, plus past and future pecuniary damages, under Counts I through V against Green in an amount to be

ascertained through discovery and proven at trial; and

- Disgorge or return to Synagro all financial benefits Green received as a result of his unlawful conduct; and

- Award Synagro punitive damages against Green in an amount of $ $500,000; and

- Award Synagro compensatory damages, damages for unjust enrichment, and exemplary damages under both the DTSA and Iowa Code § 550.4.

- Award Synagro its costs and reasonable attorneys' fees pursuant to the DTSA and Iowa Code § 550.6.

- Award Synagro with the following injunctive relief:

  i. Require Green to cease and desist from any and all activities violating Synagro's rights under federal and state statutory law, as well as the common law of the state of Iowa;

  ii. Enforce the restrictive covenants in Green's Plan for a period of at least twelve (12) months beyond the pendency of this Action; and

  iii. Require Green to turn over all electronic and tangible materials that contain Synagro's confidential and proprietary information and requiring Green to permit Synagro to inspect his personal and work devices, including laptops, desktops, and/or smartphones, any and all portable storage devices, including thumb drives, disks, and/or external hard drives, and personal and work e-mail accounts to ensure that he is no longer in possession of Synagro's confidential and proprietary information; and

- Award Synagro any and all further relief this Court deems just and proper.

15

## DEMAND FOR JURY TRIAL

Synagro hereby demands a jury trial on all issues in this action.

Dated:  May 4, 2017                    JACKSON LEWIS P.C.


                                       /s/ Kenneth M. Wentz III
                                       Kenneth M. Wentz III, AT0010309
                                       10050 Regency Circle, Suite 400
                                       Omaha, NE  68114
                                       (402) 391-1991
                                       wentzk@jacksonlewis.com

                                       Matthew F. Nieman (*pro hac vice forthcoming*)
                                       Jeremy S. Schneider (*pro hac vice forthcoming*)
                                       10701 Parkridge Boulevard, Suite 300
                                       Reston, VA  20191
                                       Phone: (703) 483-8300
                                       Niemanm@jacksonlewis.com
                                       Jeremy.Schneider@jacksonlewis.com

4845-5213-6774, v. 3